1   CHRISTI HOGIN, State Bar No. 138649
    City Attorney, City of Malibu
2   Trevor Rusin, State Bar No. 241940
    Shahiedah Coates, State Bar No. 258565
3   JENKINS & HOGIN, LLP
    1230 Rosecrans Avenue, Suite 110
4   Manhattan Beach, CA 90266
    (310) 643.8448; Fax: (310) 643.8441
5   Email: chogin@localgovlaw.com

6
    Attorneys for the City of Malibu
7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10

11  THE PARK AT CROSS CREEK, LLC        CASE NO. 2:15-CV 00033-JAK (SHx)
    and MALIBU BAY COMPANY,
12                                       Complaint served: January 5, 2015
13              Plaintiffs,

14       vs.                             [Assigned to the Hon. John A. Kronstadt]

15  CITY OF MALIBU, A MUNICIPAL          **DEFENDANT'S NOTICE OF
    CORPORATION, and DOES 1-10,          MOTION AND MOTION TO
16                                       DISMISS COMPLAINT [F.R.C.P.
                                         12(B)(6)]**
17
                Defendants.              **DATE:  MARCH 30, 2015
18                                       TIME:  8:30am
                                         DEPT:  750**
19

20

21

22

23  **TO THE HONORABLE JOHN A. KRONSTADT, UNITED STATES DISTRICT**

24  **COURT JUDGE, PLAINTIFFS AND THEIR ATTORNEYS OF RECORD**

25  **HEREIN:**

26

27

28

---

CITY'S MOTION TO DISMISS

**PLEASE TAKE NOTICE** that on March 30, 2015, at 8:30 a.m., or as soon thereafter as the matter may be heard in Courtroom 750, of the above-entitled court, located at 255 East Temple Street, Los Angeles, California, defendant the City of Malibu will and hereby does move this court to dismiss the Complaint [DOCKET NO. 1] and all nine causes of action in the above-entitled matter.

The motion is brought pursuant to the Federal Rules of Civil Procedure Rule 12(b)(6), on the grounds that the Complaint, and each claim for relief therein, fails to state a claim for which relief can be granted. The City's specific grounds are as follows:

First claim for relief purports to state a facial challenge against Measure R under the Dormant Commerce Clause of the federal constitution; but it fails to state a claim for which relief can be granted because Measure R does not discriminate against interstate commerce.

Second claim for relief purports to state a facial challenge against Measure R under the Commerce Clause of the federal constitution; but it fails to state a claim for which relief can be granted because Measure R does not regulate interstate commerce.

Third claim for relief purports to state a facial challenge against Measure R under the federal Equal Protection clause; but it fails to state a claim for which relief can be granted because the disparate treatment of existing and future shopping centers is rationally related to the Measure's goal of achieving a mix of businesses, preserving a distinct community character and respecting the reasonable expectations of existing shopping centers.

Fourth claim for relief purports to state a facial challenge against Measure R under the federal substantive Due Process clause; but it fails to state a claim for which relief can be granted because Measure R's limitations on new chain stores and specific plan requirement for large developments are rationally related to the legitimate government goal of preserving community character.

Fifth claim for relief purports to state a claim that Measure R violates the single-subject rule under Article II, Section 8 of the California Constitution; but it fails to state a claim for which relief can be granted because Measure R's provisions are all germane to the regulation of commercial development.

Sixth claim for relief purports to state a claim that the Measure R on its face violates the limitations on the initiative authority under the California Constitution; but it fails to state a claim because Measure R properly amends the zoning ordinance, which is a legislative act.

Seventh claim for relief purports to state a claim under California Planning and Zoning Law but fails because Plaintiffs do not identify any conflict between Measure R and any state law.

Eighth claim for relief purports to state a facial challenge against Measure R under California's Equal Protection clause; but it fails to state a claim for which relief can be granted because the disparate treatment of existing and future shopping centers is rationally related to the Measure's goal of achieving a mix of businesses, preserving a distinct community character and respecting the reasonable expectations of existing shopping centers.

Ninth claim for relief purports to state a facial challenge against Measure R under the California constitution's substantive Due Process clause; but it fails to state a claim for which relief can be granted because Measure R's limitations on new chain stores and specific plan requirement for large developments are rationally related to the legitimate government goal of preserving community character.

The motion is based on this notice, the memorandum of points and authorities served and filed herewith, the pleadings, files and records in this action, and all matters upon which the court may and does take judicial notice.

///

CITY'S MOTION TO DISMISS

1    Pursuant to Local Rule 7-3, Counsel met and conferred in good faith with

2  Plaintiffs' counsel regarding this motion on January 20, 2015. The parties talked

3  substantively about the issues raised in the case but were unable to resolve the matters

4  asserted by the City in this motion.

5    For the reasons set forth herein and those discussed in its memorandum of points

6  and authorities, the City respectfully requests the court dismiss this case and all its

7  claims in their entirety.

8

9  DATED   February 4, 2015              Respectfully submitted,

10

11

12                                      CHRISTI HOGIN, City Attorney
                                        JENKINS & HOGIN, LLP
13                                      Attorneys for Defendant
                                        City of Malibu

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES.........................................................................ii

I.      INTRODUCTION & SUMMARY OF ARGUMENT ..................................... 1

II.     FACTS AS ALLEGED................................................................... 3

III.    STANDARD OF REVIEW............................................................. 4

IV.     PLAINTIFFS FAIL TO STATE A CONSTITUTION CLAIM........................ 5

        A.      COMMERCE CLAUSE: Measure R does not discriminate
                against out- of-state commerce [1st Claim] ..................................... 6

        B.      COMMERCE CLAUSE: Measure R does not excessively
                burden interstate commerce [2nd Claim for relief] ...................... 10

        C.      EQUAL PROTECTION CLAIMS:  Measure R employs the
                age-old zoning device of grandfathering and otherwise
                establishes limitations sufficient to achieve its modest goal [3rd
                & 8th Claims]............................................................................. 12

        D.      DUE PROCESS:  Measure R's restrictions and exemptions are
                rationally related to goal of balanced mix of commercial uses
                implemented fairly and over time [4th and 9th Claims]................ 16

V.      PLAINTIFFS' STATE CLAIMS ALSO SUFFER FATAL DEFECTS ......... 20

        A. The Supplemental state claims should be dismissed ....................... 20

        B. Measure R does not violate the single subject matter rule [5th
           Claim]........................................................................................ 21

        C. Measure R does not violate the initiative limitations under
           California law
           [6th Claim]................................................................................... 23

        D. Measure R does not violate California Planning and Zoning Law
           [7th Claim]................................................................................... 24

VI.     CONCLUSION............................................................................. 25

i

# TABLE OF AUTHORITIES

## Cases

*Arnel Development Co. v. City of Costa Mesa*
  28 Cal.3d 511(1980) ........................................................................... 23

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009)............................................................................. 5

*Aulson v. Blanchard*
  83 F.3d 1(1st Cir. 1996) ...................................................................... 24

*Balistreri v. Pacifica Police Dep't*
  901 F.2d 696 (9th Cir.1988)................................................................. 5

*Bell Atlantic Corp. v.* Twombly
  550 U.S. 544 (2006)............................................................................. 5

*Breneric Assoc. v. City of Del Mar*
  69 Cal.App.4th 166 (1998)................................................................. 18

*Brown-Forman Distillers v. N.Y. Liquor Auth.*
  476 U.S. 573 (1986)............................................................................ 10

*Chandis Securities Co. v. City of Dana Point*
  52 Cal.App.4th 475 (1996).................................................................. 19

*Christensen v. Yolo County Bd. of Supervisors*
  995 F.2d 161 (9th Cir.1993)...........................................................17, 18

*Citizens for Planning Responsibly v. County of San Louis Obispo*
  176 Cal.App.4th 357 (2009)................................................................ 23

*City of Cleburne v. Cleburne Living Ctr.,*
  473 U.S. 432 (1985)........................................................................12, 13

*Doe v. United States*
  58 F.3d 494 (9th Cir. 1995)................................................................. 24

*Exxon Corp. v. Governor of Marylan*
  437 U.S. 117 (1978)........................................................................2, 7, 9

ii

*FCC v. Beach Commc'ns*
508 U.S. 307 (1993)..................................................................................... 13

*Fields v. Legacy Health System*
413 F.3d 943 (9th Cir. 2005)....................................................................... 13

*Foster v. Wilson*
504 F.3d 1046 (9th Cir.2007)...................................................................... 21

*Government Suppliers Consolidating Services, Inc. v. Bayh*
133 F.R.D. 531 (S.D. Ind. 1990) .................................................................. 8

*Heckler v. Mathews*
465 U.S. 728 (1984)..................................................................................... 15

*Heller v. Doe*
509 U.S. 312 (1993)..................................................................................... 14

*Kendall v. Visa U.S.A., Inc.*
518 F.3d 1042 (2008)................................................................................... 24

*Kleenwell Biohazard Waste v. Nelson*
48 F.3d 391 (9th Cir. 1995).......................................................................... 10

*Las Lomas Land Co., LLC v. City of Los Angeles*
177 Cal.App.4th 837 (2009).......................................................................... 17

*Legislature v. Eu*
54 Cal.3d 492 (1991) ................................................................................... 21

*Lingle v. Chevron U.S.A., Inc.*
544 U.S. 528 (2005)..................................................................................... 17

*Marblehead Land Co. v. City of Los Angeles*
47 F.2d 528 (9th Cir. 1931).......................................................................... 18

*Mass. Bd. of Ret. v. Murgia*
427 U.S. 306 (1976)..................................................................................... 13

iii

*Minnesota v. Clover Leaf Creamery, Co*
   449 U.S. 456 (1981)............................................................................................ 8

*Munoz v. Sullivan*
   930 F.2d 1400 (9th Cir.1991)............................................................................ 17

*NAACP, L.A. Branch v. Jones*
   131 F.3d 1317 (9th Cir.1997)............................................................................ 12

*National Ass'n of Optometrists & Opticians v. Harris*
   682 F.3d 1144 (9th Cir. 2012)............................................................................ 10

*New Orleans v. Dukes*
   427 U.S. 297 (1976).......................................................................................... 15

*Nordlinger v. Hahn*
   505 U.S. 1 (1992)....................................................................................2, 3, 15

*O'Loane v. O'Rourke*
   231 Cal. App.2d 774 (1965)................................................................................ 4

*O'Connor v. Nevada*
   27 F.3d 357 (9th Cir.1994)................................................................................ 21

*Oregon Waste Systems, Inc. v. Dept. of Env. Quality of Oregon*
   511 U.S. 93 (1994).............................................................................................. 6

*Pacific Merchant Shipping Assn. v. Voss*
   12 Cal.4th 503 (1995) ........................................................................................ 7

*People v. Rizo*
   22 Cal. 4th 681, 685 (2000)................................................................................ 8

*Personal Watercraft Coalition v. Bd. of Supervisors*
   100 Cal.App.4th 129 (2002)................................................................................ 6

*Pike v. Bruce Church, Inc.*
   397 U.S. 137 (1970)..............................................................................10, 11, 12

*Religious Tech. Ctr. v. Wollersheim*
   971 F.2d 364 (9th Cir.1992)............................................................................ 21

iv

*S.D. Myers, Inc. v City and County of San Francisco*
253 F.3d 461 (9th Cir. 2001) .................................................................6, 7, 10, 12

*San Mateo County Coastal Landowners' Assn. v. County of San Mateo*
38 Cal.App.4th 523(1995) ....................................................................................22

*Santa Clara County Local Transportation Authority v. Guardino*
11 Cal.4th 220 (1995) ..........................................................................................21

*Sea River Maritime Financial Holdings Inc., v. Mineta*
309 F.3d 662 (9th Cir. 2002) ...............................................................................16

*Senate of State of Cal. v. Jones*
21 Cal.4th 1142 (1999). .......................................................................................21

*Shea Homes Ltd. P'ship v. County of Alameda*
110 Cal.App.4th 1246 (1995) ..............................................................................22

*Sherwin-Williams Co. v. City and County of San Francisco*
857 F.Supp. 1355 (N.D.Cal.1994) .......................................................................17

*Smithfield Foods, Inc. v. Miller*
241 F.Supp.2d 978 (S.D. Iowa 2003) .....................................................................7

*Sprewell v. Golden State Warriors*
266 F.3d 979 (9th Cir. 2001) ...............................................................................24

*Taxpayers to Limit Campaign Spending v. Fair Pol. Practices Comm.*
51 Cal.3d 744 (1990) .............................................................................................8

*Taylor v. Rancho Santa Barbara*
206 F.3d 932 (9th Cir.2000)........................................................................1, 5, 13

*Terminal Plaza Corp. v. City and County of San Francisco*
177 Cal.App.3d 892 (1986) ..................................................................................17

*Tobe v. City of Santa Ana*
9 Cal.4th 1069 (1995) ............................................................................................4

*Valley Bank of Nevada v Plus System*
914 F.2d 1186 (9th Cir. 1990) ...............................................................................9

v

*Vance v. Bradley*
 440 U.S. 93 (1979)............................................................................................. 13

*Village of Euclid v. Ambler Realty Co.*
 272 U.S. 365 (1926).....................................................................................14, 15

*Wal-Mart Stores, Inc. v. City of Turlock*
 483 F.Supp.2d 987 (E.D.C.A. 2006) ........................................ 9, 10, 11, 12, 13, 16

*Waste Management of Alameda County v Biagini Waste Reduction Systems, Inc.*
 63 Cal.App.4th 1488 (1998)............................................................................... 7

*Yost v. Thomas*
 36 Cal.3d 561 (1984) ....................................................................................... 23

## State Statutes

Gov't Code § 65300 ............................................................................................ 4
Gov't Code §65302 ............................................................................................. 4
Gov't Code § 65450 .......................................................................................... 19
Cal. Gov't Code § 65451 ...................................................................................... 3
Pub. Res. Code § 30200 ...................................................................................... 4
Pub. Res. Code § 30108.6 ................................................................................... 4

## Rules

Rule 12(b)(6) of the Federal Rules of Civil Procedure ............................................1, 5

## Constitutional Provisions

Article II, Section 8 ........................................................................................... 21
Article XI, Section 7 .....................................................................................18, 24

# I.     INTRODUCTION & SUMMARY OF ARGUMENT

Plaintiffs have rushed into federal court with an ambitious agenda: they seek to prove that a recently adopted local land use initiative *on its face* violates an array of constitutional protections *under any set of circumstances*.  Plaintiffs purport to state causes of action against the City in which they must allege that Measure R *necessarily* discriminates against out-of-state commerce, will *definitely* impose an excessive burden on interstate commerce, *unavoidably* discriminates impermissibly against some commercial property owners, has *absolutely no* rational government purpose and *cannot* be implemented consistent with the constitutions of California and the United States.  To succeed on their constitutional claims, there can be no set of circumstances under which the ordinance is valid. As is usually the case with facial challenges, this burden proves too great for Plaintiffs; consequently, the complaint fails to state a cognizable constitutional claim.  See *Taylor v. Rancho Santa Barbara,* 206 F.3d 932, 938 (9th Cir.2000) (affirming district court's grant of defendant's motion to dismiss because the challenged statutory scheme passes rational basis review and thus, "the plaintiff fails to state a constitutional claim upon which relief can be granted").

Measure R is an exercise by Malibu voters of the City's police power to preserve community character by regulating commercial development.  Measure R establishes rules to assure a mix of chain[1] and non-chain stores in shopping centers and requires voter-approved specific plans for large, impactful commercial development.  As Plaintiffs themselves point out, Measure R is infused with exceptions and safeguards to aid its implementation consistent with the constitution.  So unsurprisingly, Plaintiffs are unable to meet their burden, subjecting the constitutional claims to dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

---

[1]"Chain" store is the popular vernacular for franchise businesses or "formula retail establishments," which are defined in Measure R as businesses with 10 or more locations in the world with two or more of the same of these features: merchandise/menu, color, scheme, façade, layout, logo, uniform, or store décor. Complaint, Ex. 1 at 26.

1       The rallying cry of Plaintiffs' opposition to Measure R is their persistent
2   contention that land use regulations cannot constitutionally distinguish chain stores from
3   non-chain stores. Malibu seeks to do just that and for good reason. The unregulated
4   proliferation of chain stores makes one commercial area look and feel like many others.
5   Malibu voters intend to stem the tide of the homogenization of their commercial centers
6   by setting limits on the number of chain stores. The United States Supreme Court has
7   already acknowledged the rational relationship between regulating chain stores and the
8   legitimate government interest in preserving neighborhood character. *Nordlinger v.*
9   *Hahn*, 505 U.S. 1, 12 (1992) (upholding California's Prop 13 against an equal protection
10   challenge over differential tax treatment as between existing and new property owners).

11       Unhappy with Measure R's limitations on the number and size of tenant spaces
12   that may be devoted to non-exempt chain stores, the plaintiff commercial property
13   owners attempt to re-cast Measure R as an imposition on interstate commerce. The
14   effort is doomed because the test for constitutionality under the Dormant Commerce
15   Clause is whether a measure discriminates against out-of-state business, not whether it
16   limits the manner or form in which a business operates. *Exxon Corp. v. Governor of*
17   *Marylan,* 437 U.S. 117, 119-20, 126 (1978).  Measure R does not discriminate against
18   interstate commerce; thus, Plaintiffs cannot plausibly allege the facts required to support
19   a facial challenge.

20       Likewise, Plaintiffs fail in their equal protection and due process claims primarily
21   because Measure R's regulation of commercial development is directly related to the
22   legitimate goal of preserving community character.  Plaintiffs' challenge to Measure R's
23   rationality targets its exemptions, which accommodate certain existing tenant spaces.
24   The exemptions are rational because Measure R is a planning tool, having drawn a line
25   at the potential population of chain stores allowed on April 1, 2013.  Its impact on the
26   area is prospective and will develop over time, as is usually the case with planning laws.
27   In addition, the exemptions are akin to grandfathering, a type of regulation that also has
28   been recognized by our Supreme Court as a rational means to address reasonable

1  expectations in the face of changing regulations. *Nordlinger,* 505 U.S at 12-13 ("an

2  existing owner rationally may be thought to have vested expectations in his property that

3  are more deserving of protection than the anticipatory expectations of a new owner").

4      Measure R comfortably survives the rational basis test, rendering the facial

5  challenges fatally defective.  Plaintiffs also assert three state law challenges, which the

6  City asks this Court to dismiss, either as remaining supplemental claims or because

7  Plaintiffs have failed to state a claim.

8  **II.    FACTS AS ALLEGED**

9      At a special municipal election held November 4, 2014, Malibu voters decisively

10 approved Measure R, a citizen initiative imposing new regulations for commercial

11 development.  Complaint at 1.  Measure R requires a voter-approved specific plan[2] for

12 new commercial developments over 20,000 square feet.  Complaint, Ex. 1 at 21-22.

13 Measure R also requires certain[3] Formula Retail Establishments (as defined) obtain a

14 conditional use permit (CUP) except if located in an existing tenant space between

15 1400-5000 square feet in a Civic Center shopping center that exist as of April 1, 2014.

16 *Id.* at 24-26.  Measure R prohibits new, non-exempt formula retail businesses over 2500

17 square feet. *Id.* at 25.  Measure R also limits new shopping centers to a maximum of

18 30% of the area and stores to be formula retail businesses. *Id.*

19     Measure R imposes regulations that will assure a mix of types of commercial uses

20 (formula and non-formula) and prevent Malibu's commercial areas from taking on the

21 familiarity of AnyMall, USA.  The purpose of the regulation is to promote and maintain

22

23 _____

24 [2]A "specific plan" is a planning tool defined by state law for the systematic implementation of a
   general plan. A specific plan may be as general as setting forth broad policy concepts or as detailed as
25 providing direction to every facet of development from the type, location and intensity of uses to the
   design and capacity of infrastructure. State law mandates the procedure by which specific plans are
26 adopted and requires certain provisions. Cal. Gov't Code § 65451

27 [3]Grocery stores, drug stores/pharmacies, gas stations, banks/financial services, real estate offices,
   movie theaters, postal service offices, medical offices and low-cost overnight accommodations are
28 exempt from the CUP requirement. Complaint, Ex. 1 at 25-26.

1    a distinct community character.  Measure R's voter-approval requirement applies only to
2    very large (by Malibu standards) new developments, which are a category of
3    commercial development most likely to impact the character of an area.  Malibu's
4    General Plan[4] defines the City's character as primarily a rural, residential community
5    and provides for development that is residential in scale. Request for Judicial Notice
6    (RJN) at A1-A4.  Commercial development over 20,000 square feet would be unusual in
7    Malibu and the voters concluded such development warrants greater planning review.
8          The Complaint is chock full of allegations involving Plaintiffs' respective
9    development aspirations.  Complaint ¶¶ 3-4, 10-17.  None of those allegations are
10   relevant because Plaintiffs bring a facial challenge.  Complaint ¶ 9.  Indeed, the City has
11   not had an opportunity to implement Measure R; the ink has barely dried on the City's
12   certification of the election results.

13   **III.   STANDARD OF REVIEW**

14         "A facial challenge to the constitutional validity of a statute or ordinance
15   considers only the text of the measure itself, not its application to the particular
16   circumstances of an individual. [citations omitted] 'To support a determination of facial
17   unconstitutionality, voiding the statute as a whole, petitioners cannot prevail by
18   suggesting that in some future hypothetical situation constitutional problems may
19   possibly arise as to the particular application of the statute .... Rather, petitioners must
20   demonstrate that the act's provisions inevitably pose a present total and fatal conflict
21   with applicable constitutional prohibitions.' [citations omitted]" *Tobe v. City of Santa*
22   *Ana,* 9 Cal.4th 1069, 1084 (1995).

23   ────────────────────

24   [4]State law requires the City to adopt a General Plan that includes seven mandated elements (Land Use,
     Circulation and Infrastructure, Housing, Conservation, Open Space and Recreation, Noise, and Safety
25   and Health). Gov't Code §§ 65300, 65302.  The state-mandated general plan is regarded as the
     "constitution" in the hierarchy of land use regulations. *deBottari v. Norco City Council,* 171
26   Cal.App.3d 1204, 1212 (citing *O'Loane v. O'Rourke,* 231 Cal. App.2d 774, 782 (1965)). Because
     Malibu is located in the California Coastal Zone, state law also requires the City to have a certified
27   Local Coastal Program, consisting of a Land Use Plan and a Local Implementation Program. Pub. Res.
     Code §§ 30200, 30108.6. All zoning regulations must be consistent with the General Plan and LCP.
28

4

1      "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter

2    of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint

3    is true. [citation omitted]. A complaint does not need to contain detailed factual

4    allegations, but it must contain sufficient factual matter, accepted as true, to 'state a

5    claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

6    (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2006)). However, "the

7    tenet that a court must accept as true all of the allegations contained in a complaint is

8    inapplicable to legal conclusions....While legal conclusions can provide the framework

9    of a complaint, they must be supported by factual allegations." *Iqbal,* 556 U.S. at 678-

10    79. Further, a court must draw "on its judicial experience and common sense" to decide

11    in the specific context of the case whether the factual allegations, if true, allege a

12    plausible claim. *Id.* at 679. Dismissal of a claim is warranted where a complaint lacks a

13    cognizable legal theory or alleges insufficient facts under a cognizable legal theory.

14    *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir.1988). Thus, where a set

15    of facts, even if true, would not entitle the plaintiff to relief, dismissal is appropriate. *Id.*

16    "Whether a given classification violates the Equal Protection Clause under rational basis

17    review may be determined on a motion to dismiss." *Taylor,* 206 F.3d at 938.

18    **IV.   PLAINTIFFS FAIL TO STATE A CONSTITUTION CLAIM**

19          Six of the nine claims levied against Measure R in this case purport to allege

20    facial constitutional infirmities: Plaintiffs claim the measure violates the federal

21    Commerce Clause contending it discriminates against out-of-state commerce and creates

22    an excessive burden on interstate commerce, violates the Equal Protection Clause of the

23    state and federal constitutions because current and future shopping center owners are

24    treated differently, and violates state and federal substantive due process protections

25    because they allege its provisions are not rationally related to a legitimate purpose.

26    Mostly, the Complaint reveals that Plaintiffs do not like Measure R and worry it will

27    adversely affect their planned developments. While Plaintiffs object to the methods by

28    which the Ordinance attempts to effectuate its purpose, such quibbles are in the nature of

5

1  an as-applied, as opposed to a facial, challenge. It is outside the province of the courts to

2  judge the wisdom of the voters' legislative choices.

3       A plaintiff "'cannot prevail by suggesting that in some future hypothetical

4  situation constitutional problems may possibly arise as to the particular *application* of

5  the statute…Rather [the plaintiff] must demonstrate that the act's provisions inevitably

6  pose a present total and fatal conflict with applicable constitutional prohibitions.'

7  [citations] The last portion of this quote…is the most important, for it requires plaintiffs

8  to demonstrate 'that *no set of circumstances exist under which the [Ordinance] would be*

9  *valid.*'" *Personal Watercraft Coalition v. Bd. of Supervisors,* 100 Cal.App.4[th] 129, 137-

10  38 (2002).    A plaintiff therefore can only be successful on a facial challenge if it

11  "demonstrates that the law is [unconstitutional] '*under any and all circumstances*…'"

12  *Id.*; accord *S.D. Myers, Inc. v City and County of San Francisco,* 253 F.3d 461, 467 (9th

13  Cir. 2001). As shown herein, Plaintiffs fail in their facial attack on Measure R.

14       **A. COMMERCE CLAUSE: Measure R does not discriminate against out-of-state commerce [1[st] Claim]**

15       *1. Plaintiffs' Claims*  Plaintiffs allege that Measure R discriminates against

16  interstate commerce by placing restrictions on their future ability to lease to chain stores.

17  Complaint ¶ 27. Plaintiffs concede that Measure R provides abundant opportunity for

18  chain stores in existing shopping centers [Complaint ¶ 32] but allege their own new

19  centers would be unduly restricted [Complaint ¶¶ 28-29, 31]. Plaintiffs also complain

20  that the square-foot limits on new chain stores would preclude some big-box tenants and

21  claim that would reduce options rather than promote a diverse commercial base in

22  furtherance with Measure R's purpose. Complaint ¶¶ 34-36. Plaintiffs think the City

23  should instead adopt design guidelines to protect community character. Complaint ¶ 39.

24       *2. Legal Standard*  Improper discrimination under the commerce clause means

25  "differential treatment of in-state and out-of-state economic interests that benefits the

26  former and burdens the latter." *Oregon Waste Systems, Inc. v. Dept. of Env. Quality of*

27  *Oregon,* 511 U.S. 93, 99 (1994). This discrimination "may take any of three forms:

28

first, the state statute may facially discriminate against interstate or foreign commerce;
second, it may be facially neutral but have a discriminatory purpose; third, it may be
facially neutral but have a discriminatory effect." *Pacific Merchant Shipping Assn. v.
Voss*, 12 Cal.4th 503, 517 (1995); *Waste Management of Alameda County v Biagini
Waste Reduction Systems, Inc.,* 63 Cal.App.4th 1488, 1495 (1998); *Smithfield Foods, Inc.
v. Miller* 241 F.Supp.2d 978, 986-87 (S.D. Iowa 2003).

The test for constitutionality under the Dormant Commerce Clause is whether a
measure discriminates against out-of-state business, not whether it limits the manner or
form in which a business operates. *Exxon Corp. v. Governor of Maryland*, 437 U.S.
117, 119-20, 126 (1978). On a facial challenge, Plaintiffs must show that the formula
retail definition could never potentially apply to a California business. See *S.D. Myers,
Inc. v. City and County of San Francisco*, 253 F.3d 461, 467 (9th Cir. 2001) (rejecting
commerce clause attack against an ordinance requiring city contractors to provide
nondiscriminatory benefits to employees with registered domestic partners).

*3. Application* First, Measure R does not regulate interstate commerce. Plaintiffs
improperly conflate chain stores with out-of-state businesses. Chain stores that are
entirely in-state are treated the same as those that are interstate.[5] Measure R does not
discriminate against out-of-state businesses. A CUP is required for new, non-exempt
formula retail businesses regardless of whether the company does business out of state
or entirely within California. Similarly, a company that conducts interstate business but
has fewer than 10 locations would not be a "formula retail establishment" for the
purposes of Measure R. The plain language of Measure R shows it does not distinguish
between in-state and out-of-state formula retail establishments. Accordingly, as a matter
of law Measure R does not facially discriminate against interstate commerce.

---

[5]There are plenty of examples of companies that only do business in California and meet the definition
of formula retail under Measure R. Here are a few: SusieCakes has 13 locations, Fresh Brothers has
12 locations, Centinela Feed & Pet Supplies has 15 locations and Mendocino Farms is about to open its
10th location in El Segundo, California. See City's RJN at Ex. B-E.

1    Second, Measure R has a nondiscriminatory purpose. Measure R seeks to

2    preserve the City's small-town, rural residential character, consistent with the City's

3    General Plan. Complaint, Ex. 1 at 19-20. The voters rationally believe that shopping

4    centers filled with chain stores would render the City generic, deprived of any distinct

5    character and of a diverse commercial base. *Id*. For example, while both Sports Chalet

6    (chain store with over 50 locations) and Zuma Jay's Surf Shop (located at 22775 PCH,

7    Malibu) sell surf boards, Zuma Jay's offers a unique retail experience for which one

8    would have to come to Malibu. Voters believe that unique offerings increase land

9    values and attract visitors (which boosts the local economy). Similarly, Malibu voters

10   believe a critical mass of businesses such as Sports Chalet that adhere to a formula retail

11   model in the aggregate would detract from this community character. Measure R seeks

12   to balance commercial zones so that enough of the area offers establishments that let

13   consumers know they are in Malibu, not just anywhere. This reasoning is rational,

14   legitimate and non-discriminatory —even if others would disagree with it.

15   Though irrelevant,[6] the Complaint trumpets Rob Reiner's apparent declaration in

16   the heat of a public debate that Measure R is "NIMBYism writ large baby!" and various

17   indications that supporters of the Measure sought to advance an economic protectionist

18   agenda. Complaint ¶¶ 20-25. None of these allegations aid Plaintiffs in meeting their

19   burden in this facial challenge. A lawmaker's allegedly discriminatory motivations are

20   not relevant to establishing a commerce clause violation. See *Minnesota v. Clover Leaf*

21   *Creamery, Co* 449 U.S. 456, 463 fn. 7, 471 fn. 15. (1981); *Government Suppliers*

22   *Consolidating Services, Inc. v. Bayh,* 133 F.R.D. 531, 537-39 (S.D. Ind. 1990). "Despite

23   occasional Supreme Court references to [discriminatory motive], no opinion has yet held

24   that such evidence is relevant, let alone dispositive [to establish a commerce clause

25   ────────────

26   [6]Utterances on the campaign trail by either side are not evidence of legislative intent. *People v. Rizo*,
     22 Cal. 4th 681, 685 (2000) (for indicia of voters' intent courts look particularly to analyses and

27   arguments in official ballot pamphlet); *Taxpayers to Limit Campaign Spending v. Fair Pol. Practices*
     *Comm.*, 51 Cal.3d 744, 764–765, fn. 10 (1990) (motive of drafter is irrelevant to construction).

28

8

1  violation]. If used at all, such evidence appears to be only considered as part of

2  parenthetical digressions…[T]he critical test of motive…is to be judged from an

3  objective perspective, not from a subjective one." *Bayh*, 133 F.R.D. at 539  "In no

4  Commerce Clause case cited or disclosed by research has a statute or regulation been

5  invalidated solely because of the legislators' alleged discriminatory motives." *Wal-Mart*

6  *Stores, Inc. v. City of Turlock*, 483 F.Supp.2d 987, 1013 (E.D.C.A. 2006).  The City

7  hastens to add that Measure R does not regulate businesses for being out-of-state;

8  instead, Measure R limits the number of common establishments to stave off familiarity.

9  Voters in Malibu have said Not In My Backyard to a predominance of chain stores in

10  order to preserve a distinct character in their commercial areas.  Finding that excessive

11  formula retail homogenize a shopping center is not discriminatory or unconstitutional.

12       And third, Measure R does not have a discriminatory effect on its face.  "The

13  Commerce Clause does not protect the particular structure or methods of operation of a

14  retail market. *Exxon,* 437 U.S. at 127.  Nor does it 'give an interstate business the right

15  to conduct its business in what it considers the most efficient manner,' for 'the

16  Constitution protects the interstate market, not particular interstate firms.' *Valley Bank*

17  *of Nevada v. Plus System* (9th Cir. 1990) 914 F.2d 1186, 1193." *Wal-Mart Stores, Inc.*,

18  483 F.Supp.2d at 1012.  Courts have upheld a number of statutes where the effect has

19  been to bar or burden only out-of-state businesses—so long as the statute would apply

20  the same to in-state businesses (if they existed).  For example, the Supreme Court

21  upheld a Maryland statute that barred petroleum producers and refiners from also

22  operating a retail service station within the State—even though Maryland did not have

23  any petroleum producers or refiners at the time. *Exxon,* 437 U.S. at 119-20, 126.

24  Similarly, the city of Turlock, California was allowed to bar all "discount superstores"

25  even though the only companies that conducted business in that manner were out of

26  state companies (namely Wal-Mart, K-Mart and Target). *Wal-Mart Stores, Inc.*, 483

27  F.Supp.2d  at 1014, 1022.  As Measure R affects California and out-of-state formula

28  retail businesses the same, pursuant to *Exxon Corp.* and *Wal-Mart Stores, Inc,.* there is

9

1  no discriminatory effect even if Plaintiffs' contention that formula retail businesses are

2  primarily based outside of California is true.  Measure R also does not increase the cost

3  of goods or doing business for out-of-state businesses relative to local competitors

4  because formula retailers will all be on the same playing field whether they are

5  California or out-of-state companies.

6        Rational basis review does not require that the City select an alternative method of

7  achieving its goals, one more to Plaintiffs' liking.  Measure R does not discriminate

8  against interstate commerce, so the Commerce Clause is not implicated.  To prevail in

9  its facial challenge to Measure R, Plaintiffs must be able to allege that it cannot be

10  implemented without having a discriminatory effect, not that it will have a

11  discriminatory effect in a particular situation (which would be an as-applied challenge).

12  Plaintiffs cannot plausibly allege that Measure R can only be implemented with a

13  discriminatory effect on out-of-state businesses, and thus Claim 1 fails to state a claim.

14        **B. COMMERCE CLAUSE: Measure R does not excessively burden**
      **interstate commerce [2[nd] Claim for relief]**

15        *1. Plaintiffs' Claims* Plaintiffs allege that the restrictions imposed on new

16  shopping centers are a substantial burden on interstate commerce in excess of the benefit

17  to the City. Complaint ¶ 41.

18        *2. Legal Standard* Plaintiffs' second claim for relief alleges a violation of the

19  dormant commerce clause under second tier scrutiny, also known as the *Pike* incidental

20  burdens test.  Under this test an ordinance violates the dormant commerce clause if "the

21  burden imposed on…commerce is clearly excessive in relation to the putative local

22  benefits." *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970); see *Brown-Forman*

23  *Distillers v. N.Y. Liquor Auth.,* 476 U.S. 573, 579 (1986).   "For a facially neutral statute

24  to violate the Commerce Clause, the burdens of the statute must so outweigh the

25  putative benefits as to make the statute unreasonable or irrational."  *Wal-Mart Stores,*

26  *Inc.*, 483 F.Supp.2d at 1017; *S.D. Myers, Inc.*, 253 F.3d at 471.

27        In this context, courts are extremely deferential to a local government, particularly

28

in areas of local concern. *Wal-Mart Stores, Inc.*, 483 F.Supp.2d at 1017 ("Even in Dormant Commerce Clause analysis, however, the Supreme Court has frequently admonished courts should not second-guess the empirical judgments of lawmakers concerning the utility of legislation."). The Supreme Court "has consistently held that a state's power to regulate commerce is at its zenith in areas traditionally of local concern." *Kleenwell Biohazard Waste v. Nelson*, 48 F.3d 391, 398 (9th Cir. 1995); see *National Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144 (9th Cir. 2012) (upholding ban on one-stop-shopping model and recognizing that commerce clause concerns flow of goods between states, not protecting business particular model).

**3. *Application*** Plaintiffs allege both that Measure R's exemptions hardly impose any limits on new chain stores currently (Complaint ¶32) and that Measure R imposes an excessive burden because their future shopping centers will be limited in the number of non-exempt chain stores to which they can lease (Complaint ¶ 41). This contradiction alone is enough to preclude Plaintiffs from stating a claim for excessive burden on interstate commerce. The Complaint makes pretty clear that the burden which alarms Plaintiffs is not on interstate commerce but, rather, on their own future ability to lease to formula retail businesses in excess of the limit and other than to grocery stores, drug stores, movie theaters and other exempt businesses. Complaint ¶78. Such is not the concern of the Commerce Clause.

In *Wal-Mart Stores, Inc.*, the court found no burden on interstate commerce even though the ordinance in question completely barred discount superstores from operating in the Turlock. *Wal-Mart Stores, Inc.*, 483 F.Supp.2d at 1020.   Accordingly, Measure R imposes no burden on interstate commerce. Without a burden on interstate commerce, Measure R cannot violate the *Pike* test.

Even if this Court could find an effect on interstate commerce from Measure R, such effect cannot plausibly rise to the level that would outweigh the local benefits to the City. Measure R does not ban formula retailers; rather, it limits their number and size. Complaint, Ex. 1 at 26.  These limitations are balanced against the implementation

11

1   of the City's General Plan goals to preserve a community character. See RJN at A1.

2   The only impact on new non-exempt formula retailers is that they cannot exceed 2500

3   square feet in size (unless they rent a space from a shopping center that was located in

4   the Civic Center on April 1, 2014, in which case they can occupy up to 5000 sf), and

5   potentially they would not be able to lease space in a new shopping center if that

6   shopping center already has 30% of its area devoted to formula retail.

7          If new development is allowed to flood the area with formula retail establishments

8   that can be found in almost any city, one could rationally believe negative effects would

9   follow, including eliminating any distinct community character thereby reducing

10  Malibu's draw for visitors and tourists and diminishing the quality of life for residents

11  seeking a unique, rural, small-town coastal experience.  For Measure R to be

12  unconstitutional under the *Pike* test, its burdens on interstate commerce must so

13  outweigh these benefits that this Court finds Measure R to be "unreasonable or

14  irrational."  *Wal-Mart Stores, Inc.*, 483 F.Supp.2d at 1017; *S.D. Myers, Inc.*, 253 F.3d at

15  471.  Plaintiffs cannot plausibly show that Measure R affects interstate commerce at all,

16  leaving Claim 2 fatally defective.

17          **C. EQUAL PROTECTION CLAIMS:  Measure R employs the age-old**
            **zoning device of grandfathering and otherwise establishes limitations**
18          **sufficient to achieve its modest goal [3rd & 8th Claims]**

19          *1. Plaintiffs' Claims* Plaintiffs allege that Measure R violates the Equal Protection

20  clauses of the United States and California constitutions because it "creates two classes

21  of shopping centers."  Complaint ¶43.  Plaintiffs challenge the rationality of Measure

22  R's various exemptions for existing shopping centers in the Civic Center area.

23  Complaint ¶¶ 43-44, 74-75.  Plaintiffs contend this "creates unequal classes of shopping

24  centers without any purpose or rational basis."  Complaint ¶ 74.

25          *2. Legal Standard* Equal Protection "is essentially a direction that all persons

26  similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.,* 473

27  U.S. 432, 439 (1985). "When analyzing an Equal Protection claim, heightened scrutiny

28

is applied only when a restriction burdens a suspect class or a fundamental right.
Without heightened scrutiny, a distinction need be only rationally related to a legitimate
purpose." *NAACP, L.A. Branch v. Jones,* 131 F.3d 1317, 1321 (9th Cir.1997).  "Under
this test statutes are generally presumed to be valid and will be sustained if the
classification drawn by the statute is rationally related to a legitimate state interest."
*Wal-Mart Stores, Inc.*, 483 F.Supp.2d at 1004 (*citing Fields v. Legacy Health System*,
413 F.3d 943, 955 (9th Cir. 2005)). The standard of review under the California
Constitution is the same as the standard for the United States Constitution's Equal
Protection Clause.  See *Wal-Mart Stores, Inc.*, 483 F.Supp.2d at 1010.

"[T]hose attacking the rationality of the legislative classification have the burden
to negative every conceivable basis which might support it." *FCC v. Beach Commc'ns,*
508 U.S. 307, 315 (1993). "[W]here rationality is the test, a State does not violate the
Equal Protection Clause merely because the classifications made by its laws are
imperfect." *Mass. Bd. of Ret. v. Murgia,* 427 U.S. 306, 316 (1976). However, the "State
may not rely on a classification whose relationship to an asserted goal is so attenuated as
to render the distinction arbitrary or irrational." *City of Cleburne,* 473 U.S. at 446.
Nevertheless, "such legislation carries with it a presumption of rationality that can only
be overcome by a clear showing of arbitrariness and irrationality." *Id.* at 332 (citation
omitted). Social and economic legislation is valid unless "the varying treatment of
different groups or persons is so unrelated to the achievement of any combination of
legitimate purposes that [a court] can only conclude that the legislature's actions were
irrational." *Vance v. Bradley*, 440 U.S. 93, 97 (1979).

Whether a given classification violates the Equal Protection Clause under rational
basis review may be determined on a motion to dismiss. See *Taylor,* 206 F.3d at 938.
None of Plaintiffs' allegations of improper or nefarious motive are relevant.  *E.g.*
Complaint ¶¶  5 and 7 (local protectionism and anti-development), ¶¶25 and 45 (Rob
Reiner struck a secret deal). The government actor – in this case the Malibu voters --
employing the challenged classification need not "articulate at any time the purpose or

13

1   rationale supporting its classification." The court need not investigate the actor's actual

2   reasons for so classifying. The inquiry instead is whether "any reasonably conceivable"

3   basis could justify the classification. *Heller v. Doe,* 509 U.S. 312, 320 (1993).

4       ***3. Application.*** The affected class that Plaintiffs identify – future shopping center

5   owners -- does not constitute a suspect class nor does their treatment under the

6   ordinance implicate a fundamental right; as a result, Measure R is reviewed under the

7   rational basis standard.

8       The overarching goal of Measure R is to preserve a distinct character in Malibu's

9   commercial areas. Toward that end, Measure R seeks to define stores that one likely

10   will see elsewhere (formula retail establishments) from those that are uncommon. In

11   turn, to prevent the common stores from dominating commercial areas and creating a

12   sense of familiarity (aka AnyMall, USA), Measure R seeks to strike an overall balance

13   in the commercial zones between common and uncommon retail establishments. The

14   statutory scheme makes allowances for existing developments, akin to grandfathering.

15   In the big picture, Measure R draws a regulatory line, allowing for most of the pre-

16   Measure potential for chain stores, but decreasing its ultimate potential impact with

17   prospective regulations. Measure R sets a limit on chain stores. Its modest goal to

18   strike a balance between familiar and uncommon stores is thus rationally achieved.

19       The United States Supreme Court has already acknowledged the rational

20   relationship of regulating chain stores to the legitimate government interest in preserving

21   neighborhood character:

22       "We have no difficulty in ascertaining at least two rational or reasonable
23       considerations of difference or policy that justify denying petitioner the benefits
         of her neighbors' lower assessments. First, the State has a legitimate interest in
24       local neighborhood preservation, continuity, and stability. *Village of Euclid v.
         Ambler Realty Co.,* 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926). The State
25       therefore legitimately can decide to structure its tax system to discourage rapid
         turnover in ownership of homes and businesses, for example, in order to inhibit
26       displacement of lower income families by the forces of gentrification or of
         established, **"mom-and-pop" businesses by newer chain operations.** By
27       permitting older owners to pay progressively less in taxes than new owners of
         comparable property, the Article XIIIA assessment scheme rationally furthers this
28       interest."

14

1   *Nordlinger v. Hahn* (1992) 505 U.S. 1, 12 (upholding California's Prop 13 against an

2   equal protection challenge over differential treatment as between existing and new

3   property owners) (emphasis added).

4     Likewise, Measure R's exemptions are not irrational or even unusual.  Measure R

5   is a tool of planning; that is to say it concerns itself with future development. Legislation

6   is generally prospective.   In that regard, the Measure did what virtually all zoning

7   regulations have done since *Village of Euclid v. Ambler Realty Co.*: it grandfathers

8   existing uses, makes allowances for those with reasonable expectations or vested rights,

9   and sets a course for future development with an eye toward the long term.

10     In California's Prop 13 case, the Supreme Court weighed-in by analogy in that

11   regard as well: "This Court previously has acknowledged that classifications serving to

12   protect legitimate expectation and reliance interests do not deny equal protection of the

13   laws. [footnote omitted]  'The protection of reasonable reliance interests is not only a

14   legitimate governmental objective: it provides an exceedingly persuasive justification.'"

15   *Nordlinger v. Hahn,* 505 U.S. 1, 13 (1992) (citing *Heckler v. Mathews,* 465 U.S. 728,

16   746 (1984)).  In *New Orleans v. Dukes,* 427 U.S. 297, 305 (1976), the Court determined

17   that an ordinance banning certain street-vendor operations, but grandfathering existing

18   vendors who had been in operation for more than eight years, did not violate the Equal

19   Protection Clause because the "city could reasonably decide that newer businesses were

20   less likely to have built up substantial reliance interests in continued operation."

21     Plaintiffs' attack on Measure R depends on mischaracterization of its goal.

22   Measure R does not seek to end all development or prevent another national chain store

23   from ever opening in the city limits. Instead, Measure R sets its sights on long range

24   management and balancing commercial land uses to avoid a tsunami of chain stores that

25   is otherwise possible in an unregulated environment.

26     Vacant commercial property in the civic center creates the potential for a greater

27   number of establishments on full build out of that area.  The disparity in treatment of

28   some existing civic center shopping centers from others serves the legitimate purpose of

15

1  providing a regulatory baseline for the purpose of preserving community character as

2  the area develops, assuring a mix of uses while accommodating reasonable pre-Measure

3  expectations. "Judicial review is at an end once the court identifies a plausible basis on

4  which the legislature may have relied." *Wal-Mart Stores, 483 F.Supp.2d* at 1006 (*citing*

5  *Rui One Corp.,* 371 F.3d at 1155); accord *Sea River Maritime Financial Holdings Inc.,*

6  *v. Mineta,* 309 F.3d 662, 680 (9th Cir. 2002). Accordingly, Plaintiffs fail to state an

7  equal protection claim for which relief can be granted and the City respectfully requests

8  that the court dismiss the third and eighth claims.

9  **D. DUE PROCESS:  Measure R's restrictions and exemptions are rationally
   related to goal of balanced mix of commercial uses implemented fairly
10  and over time [4th and 9th Claims]**

11  *1. Plaintiffs' Claims* Plaintiffs complain Measure R is arbitrary and contradictory

12  in five ways.  First, on their premise that Measure R finds chain stores "inimical" to the

13  desired community character, Plaintiffs allege a contradiction between that premise and

14  Measure R's exemptions that leave a generous amount of commercial space available

15  for chain stores. Complaint ¶ 48.  Second, on their premise that commercial

16  developments over 20,000 square feet are likewise inimical to the desired community

17  character, Plaintiffs contend Measure R is contradictory because it provides for an

18  approval process for (inimical) large scale development. Complaint ¶49.  Third, based

19  on a hypothetical development application, Plaintiffs contend Measure R repealed all

20  development standards and have the voters doing the City Council's job. Complaint ¶50.

21  Fourth, based on their characterization of Measure R as anti-development, Plaintiffs fear

22  that voters would never approve a specific plan for future proposed development.

23  Complaint  ¶¶ 51, 52.  Finally, Plaintiffs complain that Measure R lacks standards to

24  define how the procedural requirement of voter-approved specific plans advance the

25  goal of preserving the community's character. Complaint ¶53, 77.  Plaintiffs are

26  longtime owners of commercial property in the Malibu civic center with aspirations for

27  development [Complaint ¶¶ 3-4] and they claim Measure R damages them because they

28

16

do not have existing formula retail tenant space which would be exempt from CUP
requirement under Measure R [Complaint ¶ 78].

*2. Legal Standard*  Substantive due process provides a basis for overturning
validly enacted legislation only if the legislation is "clearly arbitrary and unreasonable,
having no substantial relation to the public health, safety, morals, or general welfare."
*Euclid*, 272 U.S. at 395. The standard for analyzing a substantive due process claim is
similar to the standard for an equal protection claim. To establish a substantive due
process violation, a plaintiff must prove that the challenged legislation fails to serve any
legitimate governmental objective. *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 542
(2005). [7] Under this analysis, legislation enjoys the same presumption of validity. *Hodel*,
452 U.S. at 331–32. In evaluating a substantive due process challenge, courts "employ a
highly deferential standard that is functionally equivalent to the rational basis test in
equal protection law." *Sherwin-Williams Co. v. City and County of San Francisco*, 857
F.Supp. 1355, 1372 (N.D.Cal.1994)(*citing Munoz v. Sullivan,* 930 F.2d 1400, 1404 n. 10
(9th Cir.1991)); *see also Christensen v. Yolo County Bd. of Supervisors*, 995 F.2d 161,
165 (9th Cir.1993)("The rational relationship test also applies to substantive due process
challenges to property zoning ordinances."). The "rational relationship" test "does not
require that legislation which furthers one legislative goal have no adverse side effects;"
"[i]t is enough that there is an evil at hand for correction, and that it might be thought
that the particular legislative measure was a rational way to correct it." *Sherwin-
Williams Co., supra* 857 F.Supp. 1372 (internal citations omitted).

---

[7]In the context of land use, California courts often engage in a consolidated analysis of substantive due
process challenges based on the California and United States Constitutions. *See, e.g., Terminal Plaza
Corp. v. City and County of San Francisco*, 177 Cal.App.3d 892, 907-911 (1986)(engaging in a
consolidated review of plaintiff's state and federal substantive due process claims); *Las Lomas Land
Co., LLC v. City of Los Angeles,* 177 Cal.App.4[th] 837, 855-857 (2009)(court conducted a consolidated
analysis of plaintiff's substantive due process claims under the California and United States
Constitutions). The federal due process analysis applies equally to Plaintiffs' substantive due process
claims asserted under article I, Section 7 of the California Constitution and the Fourteenth
Amendment of the United States Constitution.

17

To survive a motion to dismiss, Plaintiffs "must plead more than constitutional 'buzzwords;'" they "must allege specific and nonconclusory facts showing the defendant's acts deprived him[them] of a right, privilege or immunity secured by the federal Constitution or federal laws." *Breneric Assoc. v. City of Del Mar*, 69 Cal.App.4th 166, 180 (1998). A claim for deprivation of substantive due process must, "as a threshold matter," "allege a liberty or property interest within the protection of the Fourteenth Amendment," which "is defined as a legitimate claim of entitlement to a benefit." *Id.* (internal citations omitted). A property interest is more than "an abstract need or desire" to use property in a particular manner or "unilateral expectation" that it may be so used. *Id.* at 181. Further, mere ownership of property is insufficient in itself to establish that a property owner "has an unfettered right to build" or to a certain use, because "the government may constitutionally condition land use." *Id.* at 182.

In *Marblehead Land Co. v. City of Los Angeles*, the Ninth Circuit upheld a zoning ordinance of the City of Los Angeles rezoning land to residential, declaring an oil well drilling operation illegal, and restricting future use of the plaintiff's to residential.  47 F.2d 528 (9th Cir.1931). Article XI, Section 7 of the California Constitution authorizes a city to "make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws." This "police power" "permits a city to so limit the class of structures which can be erected and the kind of business which can be maintained within various areas or zones as to regulate and control the future growth and development of the city." *Marblehead Land, supra,* 47 F.2d 531. A city's "ordinances enacted in pursuance of the police power are invested with a strong presumption of validity" such that if the reasonableness of the ordinance in question is "fairly debatable," it "must be upheld." *Id.* at 532-533; *see also Christensen*, *supra* 995 F.2d 161, 165-166.

*3. Application*  The Complaint invokes the constitutional buzzwords of a substantive due process claim ("arbitrary," "contradictory," and "internally inconsistent"), but analysis of the five alleged infirmities demonstrates that Measure R is

18

not "clearly arbitrary and unreasonable." Plaintiffs tether their Complaint to statements in the citizen-initiative, which, for what it is worth, are as much a polemic against the City as they are against the interests of Plaintiffs [*see* Complaint, Ex. 1 at 19-20]. From there Plaintiffs pummel the straw man with unreasonable assertions about the intent and effect of Measure R. In this regard, it would appear that Plaintiffs mean to succeed here by fighting hyperbole with hyperbole. However, as discussed above, the court is neither bound by the proponents' subjective intent nor the opponents' far-fetched speculation. Instead, the court looks to whether Plaintiffs have alleged facts to show Measure R lacks any rational basis; Plaintiffs have not.

First, the planning goal is to create a *balance* of chain and non-chain establishments. Measure R does not purport to ban chain stores. Instead, it sets a limit on them so that they do not overwhelm the commercial areas. Measure R's generous exemptions for existing commercial space serves the purposes of setting the baseline and accommodating reasonable expectations of existing centers and is consistent with the long range planning goal of a mix of chain and non-chain stores.

Second, Measure R does not ban commercial developments over 20,000 square feet (does not treat them as "inimical" to community character). But large development will introduce a major change in a zone and warrants additional review. Thus, rather than contradicting the purpose of Measure R, the specific plan requirement directly advances the goal of assuring that commercial development is consistent with community character as defined by the General Plan. RJN at A1-A3. Indeed, that is the best and most common use of the statutory "specific plan." *See* Gov't Code § 65450 (specific plan is for the systematic implementation of the general plan).

Third, specific plans are legislative acts subject to California's initiative process. See *Chandis Securities Co. v. City of Dana Point,* 52 Cal.App.4th 475 (1996) (upholding voter referendum of specific plan and holding rejection did not violate substantive due process). Moreover, specific plans must be consistent with the state-mandated General Plan [Gov't Code § 65454], so Plaintiffs' contention that no

19

1   development standards govern the proposed development is baseless.

2   **Fourth**, Plaintiffs' fear that the voters would never approve a development does

3   not provide the court a basis to find Measure R facially unconstitutional.  This is not a

4   Lucy-"holds"-a-football-for-Charlie-Brown situation where Plaintiffs are forced to keep

5   trying a doomed effort.  If the City fails to implement Measure R in a manner that

6   affords Plaintiffs their constitutional rights, Plaintiffs will have their remedies.

7   Preemptive invalidation of Measure R is not available to allay Plaintiffs' fears.

8   **Finally**, Plaintiffs miss the connection between required specific plans and

9   preserving community character because they ignore that the substance of the standards

10   and land use policies are in the City's adopted General Plan, certified Local Coastal

11   Program and zoning ordinance.  Measure R does not repeal these standards for large

12   commercial developments; it merely adds a layer of review by requiring a specific plan.

13   Moreover, the federal constitution does not grant property owners an unfettered right to

14   build or use property in any manner they see fit, free from the constraints of local

15   zoning.  Plaintiffs complain that their future shopping centers will not be allowed as

16   many non-exempt chain businesses as they may want, but they cannot show that this

17   court has any basis to assure them that option.  Indeed, zoning laws are by their nature

18   limitations on use: under Malibu's laws Plaintiffs cannot lease to a tannery or build a

19   skyscraper either.  Thus, Plaintiffs have failed to allege a concrete property interest

20   protected by the Fourteenth Amendment that Measure R would impair.

21   In all, Measure R's reasonableness is more than "fairly debatable"—it is evident.

22   **V.  PLAINTIFFS' STATE CLAIMS ALSO SUFFER FATAL DEFECTS**

23   **A.  The Supplemental state claims should be dismissed**

24   Plaintiffs purport to plead three supplemental state claims. Because the complaint

25   fails to state a federal claim for which relief can be granted, the state claims should

26   likewise be dismissed.  Where a "district court has dismissed all claims over which it

27   has original jurisdiction," the court "may decline to exercise supplemental

28   jurisdiction." 28 U.S.C. § 1367(c). "When federal claims are dismissed before trial,"

1    supplemental "state claims also should be dismissed." *Religious Tech. Ctr. v.*

2    *Wollersheim,* 971 F.2d 364, 367–68 (9th Cir.1992); *see also O'Connor v. Nevada,* 27

3    F.3d 357, 363 (9th Cir.1994) ("[I]n the usual case in which federal-law claims are

4    eliminated before trial, the balance of the factors of economy, convenience, fairness, and

5    comity will point toward declining to exercise jurisdiction over the remaining state-law

6    claims."). The decision to decline supplemental jurisdiction under 28 U.S.C. §

7    1367(c) lies with the district court's discretion. *Foster v. Wilson,* 504 F.3d 1046, 1052

8    (9th Cir.2007).  In this case, the supplemental claims (fifth, sixth, and seventh) are

9    entirely sensitive matters involving the distribution of land use authority between the

10    state and local government and the scope of the initiative power reserved by the People

11    in the California constitution.

12    **B.    Measure R does not violate the single subject matter rule [5th Claim]**

13         California's initiative power is "jealously guarded" by the courts, and "all

14    presumptions favor the validity of initiative measures," which "must be upheld unless

15    their unconstitutionality clearly, positively, and unmistakably appears." *Santa Clara*

16    *County Local Transportation Authority v. Guardino*, 11 Cal.4th 220, 253 (1995).  Article

17    II, Section 8 of the California Constitution, also known as the "single-subject rule,"

18    provides that "[a]n initiative embracing more than one subject may not be submitted to

19    the electors or have any effect."  The California Supreme Court has emphasized that

20    "the initiative process occupies an important and favored status in the California

21    constitutional scheme and… the single-subject requirement should not be interpreted in

22    an unduly narrow or restrictive fashion that would preclude the use of the initiative

23    process to accomplish comprehensive, broad-based reform in a particular area of public

24    concern."  *Senate of State of Cal. v. Jones*, 21 Cal.4th 1142, 1157 (1999).

25         An "initiative measure does not violate the single-subject requirement if, despite

26    its varied collateral effects, all of its parts are '*reasonably germane*' to each other, and to

27    the general purpose or object of the initiative." *Id.* (citing *Legislature v. Eu,* 54 Cal.3d

28    492, 512 (1991)).  Further, the "single-subject provision does not require that each of the

21

1   provisions of a measure effectively interlock in a functional relationship. It is enough

2   that the various provisions are reasonably related to a common theme or purpose." *Id.*

3        Measure R regulates commercial development, and its provisions are all germane

4   to that purpose. California Courts of Appeal have upheld local ballot initiatives

5   regulating land use through multiple related provisions against challenges that they

6   violated the single-subject rule. In *San Mateo County Coastal Landowners' Assn. v.*

7   *County of San Mateo*, the court rejected the claim that the voter-approved Measure A,

8   the "Coastal Protection Initiative," embraced "two distinct subjects: (1) a change in

9   coastal land use policies and (2) off-shore oil drilling and onshore refineries." 38

10  Cal.App.4th 523, 523-32, 553-554 (1995).  The court reasoned that "Measure A

11  unquestionably satisfies the single-subject rule" because the "provisions of the initiative

12  are 'reasonably germane' to one another as they all deal with the planning and

13  regulation of development in the coastal zone in order to protect coastal resources..."

14  *San Mateo County Coastal Landowners' Assn., supra,* 38 Cal.App.4th 554.

15       Similarly, in *Shea Homes Ltd. P'ship v. County of Alameda*, 110 Cal.App.4th

16  1246, 1256 (1995), the court rejected a claim that a voter-approved measure violated the

17  single-subject rule.  Measure D amended portions of the East County Area Plan to

18  reserve less land for urban growth and more land for agriculture and open space. *Id.* at

19  1251.  The court "disagree[d] that Measure D's restrictions on new housing

20  developments... and its directives regarding landfills and solid waste management

21  policies and programs constitute distinct subjects." *Id.* at 1256.  Instead, the court

22  reasoned that Measure D's amendments to recycling and waste management policies

23  were "eminently germane" and "complementary mechanisms to achieve Measure D's

24  purposes" because the amended policies "will promote and/or require recycling, which

25  in turn will reduce the need for landfill," in turn preserving open and agricultural space.

26  *Id.* at 1256-1257.

27       Each provision of Measure R is germane to its declared purposes, which boil

28  down to establishing regulations on commercial development that preserve the City's

"rural, small-town character."  Just as amending recycling policies complements

preservation of open space, limiting ubiquitous chain stores and requiring certain

approvals for large commercial developments aids Malibu's effort not to become

"Anywhere, U.S.A."  Thus, by failing to allege facts to establish a violation of the single-

subject rule, Claim 5 is fatally defective.

### C.  Measure R does not violate the initiative limitations under California law [6th Claim]

The initiative power under California law is limited to legislative acts, which, in

the land use context "are distinguished from administrative or adjudicative acts on a

categorical basis."  *Citizens for Planning Responsibly v. County of San Louis Obispo*,

176 Cal.App.4th 357, 367 (2009).  Setting rules of general applicability is legislative;

applying set rules to facts is adjudicative.  *Arnel Development Co. v. City of Costa Mesa*,

28 Cal.3d 511, 523-525 (1980).  The California Supreme Court long ago decided that

approval of a specific plan is a legislative act and within the scope of the initiative/

referendum authority.  *Yost v. Thomas*, 36 Cal.3d 561 (1984).  In *Citizens for Planning

Responsibly,* the question before the court was "whether the adoption of a specific plan

is to be characterized as a legislative act;" the court had "no doubt that the answer is

affirmative."  *Citizens for Planning Responsibly, supra,* 176 Cal.App.4th 368.

Plaintiffs seek to invalidate Measure R on its face for exceeding the scope of the

initiative power based on one hypothetical application: the circumstance under which a

future proposed development in excess of 20,000 square feet would "otherwise require

only adjudicative approvals from the City."  Complaint ¶ 64.  Plaintiffs' facial attack

fails for three obvious reasons.

One, Measure R amends the City's zoning ordinance (a legislative act) to create

the voter-approved specific plan requirement.  Measure R is obviously a legislative act

and Plaintiffs do not allege otherwise.  So Measure R (ordinance creating the procedural

requirement) was within the power of the electorate to enact.

Two, Plaintiffs cannot invalidate Measure R on its face based on a hypothetical

1 | future ballot question that may be improper.  Such an as-applied challenge is not ripe; it
2 | would have to be raised in context of an actual controversy, if it ever comes to fruition.

3 | Three, Measure R incudes a savings clause to avoid application where prohibited
4 | by law: "Section 9. Exemptions for Certain Project. …[¶] B. This initiative shall not be
5 | interpreted to apply to any development, land, or use that, under state of federal law, is
6 | beyond the power of the local voters to affect by the initiative power reserved to the
7 | people via the California Constitution."  Complaint, Ex 1 at 28.  Accordingly, Plaintiffs
8 | fail to allege facts sufficient to state a claim that Measure R itself exceeded the scope of
9 | the initiative power or even authorized future excessive requirements.

### D.  Measure R does not violate California Planning and Zoning Law [7th Claim]

11 | The Complaint alleges that Measure R violates the California Planning and
12 | Zoning Law by unlawfully "purporting to create a CUP [conditional use permit] that is
13 | tenant-specific rather than use-specific," whereas "use permits such as conditional use
14 | permits apply to the *use* of property and therefore run with the land."  Complaint ¶70.
15 | The Complaint fails to cite a specific statute with which Measure R conflicts and fails to
16 | assert any allegations in support of the unsupported and incorrect legal conclusion
17 | pitched to the Court.

18 | Courts are not "required to accept as true allegations that are merely conclusory,
19 | unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State*
20 | *Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (citations omitted), *amended by* 275 F.3d
21 | 1187 (2001); *see also Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996) (courts need not
22 | "swallow the plaintiff's invective hook, line, and sinker; bald assertions, unsupportable
23 | conclusions, periphrastic circumlocutions, and the like need not be credited").  A
24 | plaintiff may be granted leave to amend if the complaint can possibly be cured by
25 | additional factual allegations. *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).
26 | However, "[d]ismissal without leave to amend is proper if it is clear that the complaint
27 | could not be saved by amendment."  *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051.

28 |

24

1    Article XI, Section 7 of the California Constitution authorizes a city to "make and
2    enforce within its limits all local, police, sanitary, and other ordinances and regulations
3    not in conflict with general laws." The City's police power is sufficient authority to
4    create a permit for a distinct use category of "Formula Retail Establishments."
5    Certainly, the City has business specific permits such as business licenses. It is the
6    distinctive character of this new land use category that creates the effects that the
7    regulations are designed to mitigate. Plaintiffs fail to present a cognizable legal theory to
8    support their blanket claim that the CUPs required by Measure R conflict with
9    California law. The legal defect cannot be rectified by amendment of the Complaint to
10   allege additional facts.

11   **VI.   CONCLUSION**

12        Unabated, proliferation of chain stores could turn every town into AnyTown.
13   Measure R represents Malibu's attempt to tackle a real, current and growing threat to its
14   community character. The California Constitution empowers cities to control
15   development for just this purpose. To be sure, Measure R may present challenges in its
16   implementation; but the City is entitled to make it work, within the confines of the
17   constitution. Plaintiffs fail to show that it cannot succeed. The United States Court,
18   expressing its policy reservations over Prop 13 ("California's grand experiment"),
19   emphasizes the court's limited role in the legislative process: If a measure "is not
20   palpably arbitrary...we must decline petitioner's request to upset the will of the people
21   of California." For all of the reasons stated above, the City respectfully requests that
22   this Court dismiss the Complaint and all its claims without leave to amend.

23   Dated: February 4, 2015                    Respectfully submitted,

24

25

26                                              Christi Hogin, City Attorney
27                                              JENKINS & HOGIN, LLP
                                                Attorneys for Defendant
28                                              City of Malibu

                                          25

1                   **PROOF OF SERVICE**

2   STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3        I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 1230 Rosecrans Avenue, Suite 110,

4   Manhattan Beach, CA 90266.

5        On February 4, 2015, I served the foregoing documents described as:

6   **DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT**

7

8   on the interested party or parties in this action by placing the original thereof enclosed in sealed envelopes with fully prepaid postage thereon and addressed as follows:

9                *PLEASE SEE SERVICE LIST ATTACHED*

10

11   ☐   **VIA U.S.MAIL.** I enclosed the above described documents in a sealed envelope or package addressed to the person(s) listed above or on the attached; caused such envelope

12      with postage thereon fully prepared to be placed in the United States mail at Los Angeles, California.

13

14          *I am readily familiar with the Jenkins & Hogin, LLP's practice of collection and processing correspondence for outgoing mailing. Under that practice it would be deposited with U.S. Postal Service on that same day with postage thereon prepaid*

15          *at Manhattan Beach, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing*

16          *in affidavit.*
           *in affidavit.*

17   ☒  (TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")). The foregoing documents will be served by the court via NEF and hyperlink to

18      the document. On February 4, 2014, I checked the CM/ECF docket for this case and determined that the following person(s) are on the Electronic Mail Notice List to receive

19      NEF transmission.

20

21   ☒  Service information continued on attached page.

22   ☒  **FEDERAL.** I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service is made.

23

24   Executed this 4th day of February, 2015, at Manhattan Beach, California.

25

26              /s/_____
             WENDY HOFFMAN

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## SERVICE LIST

*The Park at Cross Creek, LLC and Malibu Bay Company v. City of Malibu*
*Case No. 2:15-cv-00033-JAK-(SHx)*

| | |
|---|---|
| David P. Waite<br>Kenneth B. Bley<br>Frederick H. Kranz<br>Tamar C. Stein<br>Alexander M. Degood<br>COX, CASTLE & NICHOLSON LLP<br>2049 Century Park East, 28th Floor<br>Los Angeles, CA 90067-3284<br>Tel: (310) 284-2200<br>Fax: (310) 284-2100<br>dwaite@coxcastle.com<br>kbley@coxcastle.com<br>tstein@coxcastle.com<br>adegood@coxcastle.com | *Attorneys for Plaintiffs:*<br><br>The Park at Cross Creek, LLC and Malibu Bay Company |

2